| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> McELROY, DEUTSCH, MULVANEY <br> & CARPENTER, LLP <br> 1300 Mt. Kemble Avenue <br> P.O. Box 2075 <br> Morristown, NJ 07962 <br> Gary D. Bressler <br> Virginia T. Shea <br> Telephone: (973) 425-8660 <br> Facsimile: (973) 425-0161 <br> E-mail: gbressler@mdmc-law.com <br> vshea@mdmc-law.com <br><br> *Counsel for movant McElroy, Deutsch, Mulvaney & Carpenter, LLP* | |
| In re: <br><br> JOHN DUNLEA, <br><br> Debtor. | Case No. 24-16863 (SLM) <br><br> Chapter 11 <br><br> Hon. Stacey L. Meisel, U.S.B.J. <br><br> Hearing Date: September 3, 2024 at 10:00 a.m. |

## APPLICATION FOR AN ORDER APPROVING DISMISSAL OF THIS CASE FOR CAUSE PURSUANT TO 11 U.S.C. § 1112(b)(1) AND FOR OTHER RELIEF

McElroy, Deutsch, Mulvaney and Carpenter, LLP ("MDMC" or the "Firm"), by and through undersigned counsel Gary D. Bressler and Virginia T. Shea of McElroy, Deutsch, Mulvaney and Carpenter, LLP, submits this application pursuant to section 1112(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), for dismissal of this case for cause, and for other relief. In support thereof, MDMC respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is Bankruptcy Code section 1112(b).

**PRELIMINARY STATEMENT**

3. A chapter 11 bankruptcy case should be dismissed where, as here, the petition was brought in bad faith. Where a debtor's reorganization primarily involves a two-party dispute that may be resolved in state court, and the debtor's bankruptcy filing is intended to frustrate the legitimate efforts of a creditor to enforce its rights against the debtor, dismissal of the bankruptcy case for "cause" is warranted.

4. Here, Debtor John Dunlea ("Dunlea" or "Debtor") apparently did not file his chapter 11 petition with the primary goal of reorganization or obtaining financial stability. Rather, it is evident that Dunlea's primary goal was to stay, delay and/or frustrate pending litigation with MDMC in state court—specifically, a consolidated matter filed in the Superior Court of New Jersey, Union County, under Docket No. UNN-L-2073-23, captioned *McElroy, Deutsch, Mulvaney & Carpenter, LLP v. John Dunlea and Nicole Alexander* (the "Litigation").[1]

5. MDMC filed a motion for partial summary judgment against Dunlea in the pending Litigation. On July 9, 2024—the day his opposition was due—the Debtor filed his chapter 11 petition to stay his opposition deadline and prevent the trial court from resolving the motion.

6. The Debtor has no viable avenue for a chapter 11 reorganization. The Debtor lists only seven unsecured creditors, of which the listed debt to MDMC dwarfs the collective listed debt owed to the remaining unsecured creditors. If the debt owed to MDMC is determined to be correct—and a significant amount of it cannot be disputed given the Debtor's guilty plea to charges

---

[1] A separate action brought by Dunlea's non-debtor spouse, Nicole Alexander ("Alexander"), alleging wrongful termination against MDMC, has been consolidated with the Litigation.

2

of theft by deception and his agreement to pay restitution to MDMC as part of that plea—it will not be dischargeable in bankruptcy.

7. MDMC's claims against Dunlea in the Litigation are for (1) breach of fiduciary duty/loyalty, (2) fraud and (3) conversion, all resulting from Dunlea's embezzlement of funds from MDMC while employed as MDMC's CFO/COO, and use of the Firm's credit card for personal purchases ("MDMC Claims").

8. Dunlea pleaded guilty to charges of theft by deception and failure to pay state income tax on the personal expenditures he charged to the Firm credit card. Importantly, the MDMC Claims are not dischargeable in bankruptcy, so that the chapter 11 filing would not limit Dunlea's obligation to pay this debt.

9. Likewise, Dunlea also apparently owes a debt to his ex-wife, presumably for domestic support obligations, which also would not be dischargeable in bankruptcy. One of the other alleged unsecured creditors listed by Dunlea is his current wife, Nicole Alexander.

10. As part of the sentence for his crimes, Dunlea was ordered to make restitution to MDMC in the amount of $1,538,221.88 less any amount that he had already paid, as well as to the State of New Jersey. Restitution is a debt that is not dischargeable in bankruptcy.

11. Dunlea was also sentenced to prison for five years for his crimes. As a result, he has no reasonable expectation of timely or adequately funding any plan of reorganization.

12. For all of these reasons, the Court should dismiss Dunlea's bankruptcy case as not serving a valid bankruptcy purpose and bar him from filing any other bankruptcy petition for one year.[2]

---

[2] Additionally, if this Application to Dismiss the Dunlea bankruptcy filing is granted, MDMC should be permitted leave to file a separate motion seeking sanctions for attorneys' fees and expenses against Debtor's counsel under Fed. R. Bankr. P. 9011 as a result of Dunlea's counsel participating in Dunlea's bad-faith filing.

**RELEVANT BACKGROUND**

**A.     MDMC's Embezzlement Lawsuit Against Dunlea**

13.     On June 27, 2023, MDMC initiated the Litigation against the Debtor and his non-debtor wife, Alexander, by filing a complaint in state court (the "Complaint").[3] (*See* Declaration of Virginia T. Shea at ¶4 and Exhibit "A" thereto, a true and correct copy of the Complaint).

14.     According to the Complaint, the Debtor served as MDMC's CFO/COO since 2007. MDMC contends in the Complaint that from at least 2011 until his employment was terminated in April 2023, Dunlea systematically violated his fiduciary duty to the Firm, defrauded the Firm, and converted Firm funds to his own use by (a) paying himself unauthorized salary and bonus monies estimated to be at least $1.6 million; and (b) causing the Firm to pay personal charges estimated to exceed an additional $1.6 million, made on the Firm's business credit card by the Debtor and Alexander. (*Id.* at ¶ 5 and Exhibit "A" thereto, Complaint at ¶¶ 7-15, 20-24).

15.     The Complaint alleges that when the Firm confronted the Debtor in April 2023, he offered to reimburse the Firm for the money he had stolen, and thereafter cashed in his 401(k) plan and wired the Firm approximately $366,000 in partial repayment of the stolen funds. (*Id.* at ¶ 6 and Exhibit "A" thereto at ¶¶ 15-16).

16.     The Complaint alleges that the Debtor (1) breached his fiduciary duty/duty of loyalty to the Firm, (2) committed fraud, and (3) committed conversion, entitling the Firm to compensatory, consequential and punitive damages, equitable disgorgement of the Debtor's compensation during his breach of his duty of loyalty from 2011 through the date of his termination, and for a constructive trust over the Debtor's and his wife's marital property ("Marital Property"). (*Id.* at ¶ 7 and Exhibit "A" thereto at ¶¶ 29-47 and Prayer for Relief).

---

[3] A separate action Dunlea's non-debtor spouse, Nicole Alexander, filed against MDMC alleging wrongful termination has been consolidated within the Litigation.

17. Shortly after filing the Complaint, MDMC filed a notice of *lis pendens* as to the Marital Property, based on its pursuit of the constructive trust. (*Id.* at ¶ 8 and Exhibit "B" thereto, a true and correct copy of the Notice of *Lis Pendens* filed by MDMC).

18. On August 9, 2023, the Debtor's non-debtor spouse, Alexander, filed a motion to discharge the Notice of *Lis Pendens*. (*Id.* at ¶ 9 and Exhibit "C" thereto, a true and correct copy of the Litigation Court Docket, at entry for 8/9/2023 [filed as a Motion to Enforce Litigants Rights]).

19. Opposition and reply papers were filed on Alexander's motion to discharge the Notice of *Lis Pendens*, a plenary hearing was held on that motion on May 4, 2024, and post-hearing memoranda were filed. MDMC's constructive trust claim raised in its motion to discharge the Notice of *Lis Pendens* is fully submitted and awaiting decision. (*Id.* at ¶ 10 and Exhibit "C" thereto at entries for 8/17/2023, 8/21/2023, 2/26/2024, 4/11/2024, 4/26/2024, 5/20/2024 and 5/17/2024).

20. On May 23, 2024, MDMC filed a motion for partial summary judgment against Dunlea. Alexander filed her opposition to that motion on June 10, 2024, and MDMC filed a reply. (*Id.* at ¶ 11 and Exhibit "C" thereto at entries for 5/23/2024, 6/10/2024 and 6/17/2024). Dunlea did not oppose MDMC's motion for partial summary judgment on the original due date, as Alexander did.

21. On June 19, 2024, Dunlea filed a Motion to Withdraw his Invocations of his Fifth Amendment Privileges [Motion to Enforce Litigants Rights] in the Litigation. MDMC filed opposition thereto on June 27, 2024, and Dunlea filed a reply on July 1, 2024. Dunlea's motion has not been heard by the state court. (*Id.* at ¶ 13 and Exhibit "C" thereto, Litigation Court Docket at entries for 5/23/2024, 6/27/2024 and 7/1/2024).

5

22. When MDMC pointed out Dunlea's failure to oppose its motion for partial summary judgment, he took the position that his time to file opposition papers had been reset. Specifically, Dunlea's counsel, in a July 1, 2024 reply letter brief in support of his motion to withdraw his invocation of the privilege against self-incrimination, stated: "And in any event, the Court has adjourned the return date of Plaintiff's motion [for partial summary judgment] to July 19, 2024, making Dunlea's opposition due on July 9, 2024." (*Id.* at ¶ 12 and Exhibit "D" thereto, a true and correct copy of Gruppuso Legal correspondence to Hon. Daniel R. Lindemann, J.S.C. dated July 1, 2024, at p. 5).

23. But Dunlea did not file opposition to MDMC's Motion for Partial Summary Judgment on July 9, 2024. Instead, he filed his chapter 11 petition that day to automatically stay the proceedings against him, thus delaying disposition of his pending motions.[4] (*Id.* at ¶ 14).

**B.    Dunlea's Guilty Plea and Sentence**

24. On or about February 12, 2024, the Debtor was charged with theft by deception and tax evasion based on the same conduct MDMC described in the Complaint. (*Id.* at ¶ 15 and Exhibit "F" thereto, a true and correct copy of the *Complaint-Summons* dated February 12, 2024, in the criminal matter *The State of New Jersey v. John A. Dunlea*).

25. On May 8, 2024, Dunlea pleaded guilty to those charges. Dunlea acknowledged that as part of his plea, he owed restitution to MDMC in the amount of $1,538,221.88 less any amount that he had already paid [$366,589.61], and that he owed restitution to the State of New Jersey in the amount of $22,568.56. Dunlea acknowledged that the State would recommend a

---

[4] The Court asked the parties to submit a letter regarding the effect of the bankruptcy filing on the Litigation. (See Shea Declaration at Exhibit "C," Litigation Court Docket at 7/16/2024 entry). Alexander submitted a letter dated July 26, 2024 taking the position that the bankruptcy automatic stay only applies to MDMC's claims against Dunlea, and that its claims against Alexander, and Alexander's claims against MDMC in her consolidated case, should not be stayed. (*See* Shea Declaration at Exhibit " E," a true and correct copy of Fox Rothschild's July 26, 2024 letter to the Hon Daniel R. Lindemann).

6

sentence of five years imprisonment. (*Id.* at ¶ 16 and Exhibit "G" thereto, a true and correct copy of Dunlea's Plea Transcript at pp. 16, 22-24).

26. On July 30, 2024, Dunlea was committed to the custody of the Commissioner of the Department of Corrections for a period of five years, and was ordered to pay as restitution, $1,171,632.27 to MDMC and $22,568.56 to the State of New Jersey, Division of Taxation. (*Id*. at ¶ 17 and Exhibit "H" thereto, a true and correct copy of Dunlea's Judgment of Conviction & Order for Commitment).

C. **Dunlea's Chapter 11 Bankruptcy**

27. Dunlea's chapter 11 petition identifies only seven unsecured creditors. The creditor with the largest claim is MDMC (Dunlea lists MDMC's claim as $1,134,000.00). (Docket No. 1).

28. Other listed unsecured creditors include Marguerite Dunlea, the Debtor's ex-wife, with a claim listed in the amount of $83,710.00. It is presumed that this debt arises out of a domestic support obligation. (*Id.* and Docket No. 15 at Schedule E/F: Creditors Who Have Unsecured Claims at 4.4).

29. Dunlea lists Alexander as an unsecured creditor in the amount of $80,000. (*Id.*). It should be noted that Alexander, a purported creditor, paid Dunlea's $20,000.00 bankruptcy retainer fee to Webber McGill LLC. (Docket No. 9-1, Certification of Douglas J. McGill, Esq. at par. 3).

30. The remaining listed unsecured creditors are Credit Management, Inc. ($168.00), Dunlea's criminal defense counsel, Gibbons PC ($35,000), Dunlea's Litigation counsel, Gruppuso Legal ($19,275) and Volkswagen Credit Inc. ($8,417). (Docket No. 1).

7

31. Dunlea's filed schedules reflect that his monthly income is zero and that Alexander's monthly income is $2,209.99, while monthly expenses total $17,048.00. (*See* Docket No. 15 at Schedule I: Your Income, at Part 2 and Schedule J: Your Expenses at Part 2).

32. The mortgage on the Marital Property appears to be fully secured by its presumed perfected lien on the Marital Property, the value of the Marital Property being reported as being far in excess of the balance on the mortgage. (*See* Docket No. 15 at Schedule D: Creditors Who Have Claims Secured by Property).

## LEGAL ARGUMENT

**A.    Dunlea's Chapter 11 Case Should Be Dismissed as it was Filed Merely to Obtain a Tactical Litigation Advantage and Not for a Legitimate Bankruptcy Purpose**

33. A chapter 11 bankruptcy case must be dismissed where cause has been established. Section 1112(b)(1) of the Code states in pertinent part: "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause …." (Emphasis added). In addition, a chapter 11 petition is subject to dismissal unless it is filed in good faith. *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999).

34. Once it has been established that cause is at issue, it becomes the debtor's burden to establish good faith. *Id*. at 162, n. 10.

35. The Code sets out a variety of enumerated factors that may constitute "cause" for dismissal, including, a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. 1124(b)(4)(A). This list is not exhaustive. *In re Ravick Corp.*, 106 B.R. 834, 842 (Bankr. D.N.J. 1989). The United States District Court for the District of New Jersey has recognized that although no longer specifically enumerated as an

8

example of "cause," the inability to effectuate a plan is a basis for dismissal. *In re Tarquinio*, 2017 U.S. Dist. LEXIS 194421 at *12, 2017 WL 5707538 (D.N.J. 2017).

36. Integral to the determination of a good-faith filing is "(1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of a debtor's estate, and (2) whether the petition is filed to obtain a tactical litigation advantage." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119-20 (3d Cir. 2004).

37. Dismissal is appropriate where a case was not filed to achieve the valid, legitimate purpose of the rehabilitative provisions of chapter 11. *In re Ravick Corp.*, 106 B.R. at 843.

38. Expanding on the "cause" factors enumerated in the Code, the Bankruptcy Court for the District of New Jersey has recognized other factors that may be considered upon a motion to dismiss for cause, including where there is:

> little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments … Typically, there are only a few, if any, unsecured creditors whose claims are relatively small … Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford [and/or] [b]ankruptcy offers the only possibility of forestalling loss of the property…."

*In re Ravick Corp.*, 106 B.R. at 843 (citing to factors identified in *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986)).

39. Here, dismissal for cause is warranted because the bankruptcy case predominately arises out of state court litigation and the chapter 11 petition "is intended to frustrate the legitimate efforts of [a] creditor[ ] to enforce [its] rights against the debtor." *In re Ravick*, 106 B.R. at 844 (citing in part to *In re Noco, Inc.*, 76 B.R. 839 (Bankr. N.D. Fla. 1987) (dismissing bankruptcy petition because the debtors were "[c]learly attempting to use the reorganization process to litigate non-bankruptcy issues and to avoid the burdens of a contract") and *Matter of Young*, 76 B.R. 376

9

(Bankr. D. Del. 1987) (dismissing chapter 11 petition because the debtor filed it to stop a specific-performance award).

40. For example, the Third Circuit concluded that a debtor's chapter 11 petition was not filed in good faith where the debtor was "unquestionably 'out of business' and therefore ha[d] no going concern value to preserve in Chapter 11 through reorganization or liquidation" and where it was not conceivable that estate assets could be preserved or maximized in an orderly liquidation. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 120-22.

41. The Third Circuit has held that a plan of rehabilitation must contemplate a "reasonable possibility" of success "within a reasonable time." *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991).

42. Here, Dunlea is unquestionably "out of business," as he is apparently unemployed and received a five-year prison sentence, during which time he will garner minimal earnings, should he choose to work in prison.[5] Accordingly, Dunlea has no viable basis for proposing and funding a timely, realistic plan of reorganization.

43. Likewise, it does not appear that liquidation under the cloak of bankruptcy would provide any greater preservation or maximization of estate assets than a liquidation outside of bankruptcy could provide. Accordingly, the filing of the Dunlea petition serves no valid bankruptcy purpose.

44. The Third Circuit has recognized that "Chapter 11 vests petitioners with considerable powers—the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.—that can impose a significant hardship on particular creditors[,]" yet the

---

[5] It should be noted that Dunlea's filed schedules reflect that his monthly income is zero and that Ms. Alexander's monthly income is $2,209.99, while monthly expenses total $17,048.00. (*See* Docket No. 15 at Schedule I: Your Income, at Part 2 and Schedule J: Your Expenses at Part 2).

10

exercise of these powers is not justified "when a petitioner's aims lie outside those of the Bankruptcy Code." *In re SGL Carbon Corp.*, 200 F.3d at 165-66. Here, that the bulk of the value of Dunlea's listed claims likely would not be dischargeable in bankruptcy is further evidence that bankruptcy would serve no valid purpose.[6]

45. Should MDMC succeed on its claims against Dunlea in the Litigation, which are based on the same fraudulent conduct to which he pleaded guilty and was sentenced in the criminal matter, any judgment would be non-dischargeable under either (1) 11 U.S.C. § 523(a)(2)(A), as such debt would necessarily be deemed to have been procured by false pretenses or actual fraud; (2) 11 U.S.C. § 523(a)(4), which renders nondischargeable debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"; and/or (3) 11 U.S.C. § 523(a)(6), "willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

46. Further, the order of restitution as to MDMC and the State of New Jersey, which the Hon. Stephen J. Taylor, P.J.Cr. entered in Dunlea's criminal case on July 30, 2024, is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(19)(B)(iii) ("court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor.").

47. Likewise, any judgment MDMC obtains against Dunlea in the Litigation awarding disgorgement of Dunlea's compensation in favor of MDMC would also be nondischargeable under 11 U.S.C. § 523(a)(19)(B)(iii).

48. Moreover, domestic support obligations are not dischargeable under 11 U.S.C. § 523(a)(5). To the extent that Dunlea's debt in the amount of $83,710 to his ex-wife (Marguerite

---

[6] The mortgage on the Marital Property would not be discharged in bankruptcy. This is of no matter with respect to any potential plan of reorganization, as the mortgagee would be fully secured by its presumed perfected lien on the Marital Property, the value of which appears to be far in excess of the balance on the mortgage, based upon Dunlea's filed statements. (*See* Docket No. 15 at Schedule D: Creditors Who Have Claims Secured by Property).

11

Dunlea) arises out of domestic support obligations, which it presumably does, such debt would be non-dischargeable. (*See*, Doc No. 1).

49. The listed unsecured claim of Alexander in the amount of $80,000 raised a question as to whether she is a *bona fide* creditor. (Docket No. 1). As noted above, Alexander paid Dunlea's $20,000.00 retainer to Webber McGill LLC, his bankruptcy attorney, raising an obvious conflict concern. (*See* Docket. 9-1 at par. 3).

50. It is therefore clear that Dunlea's petition was filed to obtain a tactical litigation advantage. The petition was filed on the same date his opposition to MDMC's partial summary judgment motion was due to be filed, July 9, 2024. The filing automatically stayed further proceedings on MDMC's Motion for Partial Summary Judgment, which was ripe for oral argument or disposition.[7] Given that Dunlea had already pleaded guilty to theft by deception, agreed to restitution and admitted to his guilt, there was no serious question that MDMC would have prevailed on the Motion for Partial Summary Judgment had Dunlea used a chapter 11 bankruptcy filing to forestall the state court's decision.

51. Thus, Dunlea's bankruptcy filing appears to have no purpose other than that of a tactical maneuver to halt the proceedings against him (and as against his wife, at least as to the constructive trust claim), as a result of the automatic stay, while his wife attempts to continue to pursue her claim against MDMC.

**B.     Dunlea Should Be Enjoined From Filing For Bankruptcy Protection, Absent Leave of Court, for One Year**

52. Pursuant to Section 349(a) of the Code, the Bankruptcy Court may enjoin a debtor from filing subsequent petitions following the dismissal of a case.

---

[7] Recognizing that the Court first has to decide Dunlea's Motion to Withdraw his Invocations of his Fifth Amendment Privileges.

12

53. In *In re Atiyeh*, 2022 U.S. App. LEXIS 33019, 2022 WL 17336205 (3d Cir. 2022), the Third Circuit affirmed an order enjoining the debtor from filing a subsequent bankruptcy petition for three years, where there had been a pattern and practice of filing several petitions over several years, constituting bad faith.

54. Accordingly, here, it would be reasonable to enjoin Dunlea from filing any subsequent bankruptcy petitions for one year.

C.  **MDMC Reserves Its Rights to Seek Sanctions Under Fed. R. Bankr. P. 9011**

55. Fed. R. Bankr. P. 9011(b) provides that an attorney that signs a petition or pleading, represents that such writing is not being presented to harass or to cause unnecessary delay or needless increase in the cost of litigation, and that the writing is not frivolous. Fed. R. Bankr. P. 9011(c) provides that if a Bankruptcy Court determines that the foregoing representations have been violated, it may award sanctions upon the violative attorney or law firm.

56. A request for sanctions is to be made separately from other motions or requests.

57. MDMC asks that any order dismissing Dunlea's bankruptcy permit MDMC to file within 30 days of entry of an order of dismissal, a motion seeking its attorney's fees and costs arising out of its efforts to seek dismissal of Dunlea's bankruptcy.

{REMAINDER OF PAGE INTENTIONALLY LEFT BLANK}

**CONCLUSION**

For the foregoing reasons, MDMC respectfully requests that the Court dismiss this case, enjoin the Debtor from filing any further bankruptcy petitions for one year, and preserve MDMC's right to seek sanctions against the Debtor's counsel.

Respectfully submitted,

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: August 8, 2024

*/s/ Gary D. Bressler*
Gary D. Bressler
Virginia T. Shea
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
Telephone: (973) 425-8660
Facsimile: (973) 425-0161
E-mail: gbressler@mdmc-law.com
          vshea@mdmc-law.com

*Counsel for movant McElroy, Deutsch, Mulvaney & Carpenter, LLP*